

**SO ORDERED.**
**SIGNED this 8th day of November, 2023**

_____
Suzanne H. Bauknight
UNITED STATES BANKRUPTCY JUDGE

**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**

_____

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
# EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re | |
| K & L TRAILER SALES AND LEASING, INC. | Case No. 3:20-bk-31619-SHB<br>Chapter 11 |
| Debtor | |
| | |
| GREENEVILLE FEDERAL BANK, FSB | |
| Plaintiff | |
| v. | Adv. Proc. No. 3:23-ap-03003-SHB |
| FIRST PEOPLES BANK OF TENNESSEE | |
| Defendant | |

## MEMORANDUM AND ORDER ON
## SECOND RENEWED MOTION TO DISMISS

This adversary proceeding was commenced by the filing of the Complaint for Adjudication of the Priority of the Security Interest in Greeneville Federal Bank in Certain New Trailers of the Debtor and Sales Proceeds Therefrom [Doc. 1], as amended [Doc. 14] (collectively, the "Complaint"). Greeneville Federal Bank ("Plaintiff" or "GFB") seeks a

determination that the Intercreditor Agreement between it and First Peoples Bank ("Defendant" or "FPB") results in Plaintiff holding a superior security interest to that held by Defendant in proceeds from the sale of nine trailers ("Disputed Trailers") in the underlying bankruptcy case.[1] The Chapter 11 Trustee, Gary M. Murphey ("Trustee"), received and disbursed to Defendant the aggregate amount of $373,083.20[2] for the Disputed Trailers, for which Plaintiff seeks a judgment against Defendant.[3]

Before the Court is the Second Renewed Motion to Dismiss ("Dismissal Motion")[4] filed by Defendant on July 14, 2023, together with a supporting Memorandum of Law [Docs. 26, 27]. Defendant seeks dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012(b), arguing that the Complaint is based on Plaintiff's erroneous interpretation of the Intercreditor Agreement between Plaintiff and Defendant dated April 30, 2015 [Doc. 14-4] and the Uniform Commercial Code ("UCC") as codified in Tennessee. More specifically, Defendant disputes Plaintiff's legal conclusion about the nature of Defendant's security interest. Plaintiff asserts that Defendant has no security interest at all in Sales' new trailer inventory (and thus the Disputed

---

[1] *In re K & L Trailer Sales and Leasing, Inc.*, No. 3:20-bk-31619-SHB (the "Bankruptcy Case").

[2] The net sales proceeds for the Disputed Trailers, which are identified by the following vehicle identification numbers, were as follows: $49,873.00 for 4T9FC40B1L1110525; $57,204.04 for 4T9FC40B3L1110526; $57,204.04 for 4T9FC40B5L1110527; $60,240.00 for 4T9DS35C3L1110611; $21,375.00 for 1TTF532C1L321820; $31,201.56 for 1RNF48A29LR052379; $42,509.00 for 1RNF48A25LR052380; $31,201.56 for 1RNF48A20LR052383, and $22,275.00 for 5JYCV4522LEP17623 [Doc. 14-2.]

[3] The Court notes that although the Complaint here seeks only a determination of priority as to the proceeds from the bankruptcy sale of the Disputed Trailers, the outcome of this adversary proceeding will affect the remainder of adversary proceedings pending in relation to the Bankruptcy Case and the related bankruptcy case, *In re K & L Trailer Leasing, Inc.*, No. 3:20-bk-31620-SHB, because it will clarify who holds a priority interest in new trailers of K & L Sales and Leasing, Inc. ("Sales") for purposes of negotiations between the priority secured creditor as determined by this adversary proceeding and the competing creditors in the various other adversary proceedings.

[4] Defendant originally filed a dismissal motion on February 17, 2023 [Doc. 10], following by a second motion on March 17, 2023 [Doc. 16], after Plaintiff amended its Complaint. The March 17 motion was denied without prejudice on June 30, 2023 [Doc. 24], following oral argument on June 29, 2023.

Trailers) because Defendant's Commercial Security Agreement with Sales dated September 26, 2019 (the "Security Agreement"), gave Defendant only a purchase money security interest ("PMSI") by the collateral description as "Purchase Money Security Interest in all New Trailers." [Doc. 14-8 at p. 2.]  The crux of Plaintiff's claim is that because Defendant did not properly ensure that its security interest met the requirements of the UCC as adopted in Tennessee for PMSIs, Defendant has no security interest in new trailers that would have had priority over Plaintiff's security interest under the terms of the Intercreditor Agreement.

Plaintiff timely responded to the Dismissal Motion on August 31, 2023 [Doc. 28], arguing that the terms of the Security Agreement were expressly limited to the granting of a PMSI in new trailers and that because Defendant failed to ensure that it possessed a PMSI in Sales' new trailers as required by state law, Defendant possesses <u>no</u> security interest that would have priority over Plaintiff's under the Intercreditor Agreement.

The Court finds as a matter of law that the collateral description in the Security Agreement sufficed under Tennessee law to create a general security interest notwithstanding the additional words "Purchase Money Security Interest" included in the collateral description. Thus, as a matter of law, the Intercreditor Agreement between Plaintiff and Defendant operated to subordinate Plaintiff's otherwise priority security interest to Defendant's security interest in Sales' new trailers.  Accordingly, the Court will grant Defendant's Dismissal Motion and dismiss Plaintiff's Complaint.

### I. DISCUSSION

#### A. <u>Failure to State a Claim Under Rule 12(b)(6)</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal for "failure to state a claim upon which relief can be granted."  Under Rule 8(a), a pleading must contain the

following: "(1) a short and plain statement of the grounds for the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing . . . entitle[ment] to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a) (applicable to adversary proceedings under Fed. R. Bankr. P. 7008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Twombly*, 550 U.S. at 555 (citations and internal quotation marks omitted).

Although a complaint will survive a motion to dismiss if it contains "either direct or inferential allegations respecting all material elements," courts are not required to "accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275-76 (6th Cir. 2010)).

When deciding whether to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). The Court must also "'consider[] the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial

notice.'" *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 794 (6th Cir. 2016) (alteration in original) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)); *see also Spier v. Coloplast Corp.*, 121 F. Supp. 3d 809, 813 (E.D. Tenn. 2015) ("[M]atters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint also may be taken into account [when reviewing a Rule 12(b)(6) motion]." (citations omitted)).

The Dismissal Motion attacks Plaintiff's legal conclusion that Defendant's alleged failure to acquire a valid PMSI in the Disputed Trailers entitles Plaintiff to a judicial determination that its security interest is superior to Defendant's security interest with a resulting judgment that Defendant owes to Plaintiff the $373,083.20 that Defendant received from the Trustee's disbursement of sale proceeds. Because Plaintiff cannot prove that it is entitled to relief as a matter of law, even accepting its factual allegations as true, dismissal is appropriate.

### B. Factual Allegations Accepted as True for Purposes of the Dismissal Motion

On October 1, 2010, Plaintiff made a loan to Sales, for $2,500,000.00. [Doc. 14 at ¶ 16.] Sales gave Plaintiff a security interest in "virtually all of the assets of Sales, including its inventory of new and used trailers," which Plaintiff properly perfected. [*Id*. at ¶ 16.] Because Sales was continuously engaged in the sale of "big rig" trailers that constituted its inventory, Plaintiff held a blanket inventory lien on all new and used trailers owned by Sales. [*Id*. at ¶ 18.] Plaintiff also entered into an Intercreditor Agreement with Defendant on April 30, 2015, through which Plaintiff subordinated its security interests to the security interest of Defendant "in all new trailer inventory now and hereinafter held by [Sales]" other than certain excepted trailers identified on Exhibit A to the Intercreditor Agreement. [*Id*. at ¶¶ 19-20, Ex. D.]

Through the Security Agreement, Sales agreed to give to Defendant a security interest in collateral described as "Purchase Money Security Interest in all New Trailers." [*Id*. at ¶ 21, Ex.

H.] During written discovery in adversary proceedings relating to the Bankruptcy Case, Defendant was unable to produce any evidence "that the proceeds of its loan to Sales w[ere] actually used to purchase new trailers" and "that the funds advanced on its loan to Sales w[ere] actually used by [Sales] for the purchase of new trailers." [*Id*. at ¶¶ 24-25.] Monthly bank account statements for Sales' bank account with Defendant do not reflect any payments from the account to manufacturers or dealers and, instead, reflect payments to Sales itself, K & L Trailer Leasing, Inc., Defendant, and other third parties. [*Id*. at ¶¶ 26-28.]

Plaintiff alleges that because Defendant cannot prove that Sales used the loaned funds from Defendant to purchase new trailers, Defendant "did not have a PMSI [as defined by Tennessee Code Annotated section 47-9-103(a) and subject to section 47-9-103(g)], and consequently no security interest, in said trailers, and therefore there is no security interest of [Defendant] in those trailers for which subordination by [Plaintiff] could apply." [*Id.* at ¶ 29.] The result, Plaintiff concludes, is that the Trustee's disbursement to Defendant should have been paid to Plaintiff. [*Id*.] In summary, Plaintiff avers in its Complaint that because Defendant cannot prove that Sales used any of its loan proceeds from Defendant to purchase any of the trailers, Defendant did not have a valid PMSI and, consequently, had no security interest in the Disputed Trailers that could be subject to subordination of Plaintiff's priority security interest in the Disputed Trailers under the Intercreditor Agreement.

### C. Contract Interpretation and the Uniform Commercial Code

1. *The Intercreditor Agreement subordinated Plaintiff's security interest to the security interest of Defendant as defined by the Security Agreement between Defendant and Sales.*

The Court begins its analysis of the relative priorities by looking to the Intercreditor Agreement, which Plaintiff agrees is binding on the parties. The Intercreditor Agreement clearly provides that Plaintiff subordinated its security interests "to the security interest of [Defendant]

in all new trailer inventory now or hereinafter held by [Sales] or offered for sale, lease or rental by [Sales]." [Doc. 14-4 at p. 2 (¶ 1).] That is, the express terms of the Intercreditor Agreement did not subordinate Plaintiff's security interest only to any PMSI of Defendant.

Plaintiff notes that at the time that the Intercreditor Agreement was executed, Defendant had not yet filed a UCC-1 financing statement and that Plaintiff was not privy to the terms of the Security Agreement, which Plaintiff learned about only when the Security Agreement was attached to Defendant's proof of claim filed in the Bankruptcy Case. [Doc. 28 at p. 4.] These facts make no difference to the Court's analysis under contract law because Plaintiff does not allege that it relied on any representation by Defendant that Defendant's security interest with Sales would be limited to a PMSI as to new trailers held by Sales. Nor does Plaintiff assert that it was provided a copy of the Security Agreement (which it could have requested) and that it relied on the collateral description to conclude that Defendant would have priority over Plaintiff only for PMSI in new trailers and none otherwise. At bottom, because the Intercreditor Agreement did not limit Plaintiff's subordination to Defendant's PMSI, the Court must look to the Security Agreement, as construed by Tennessee law, to determine what security interest Defendant held for purposes of the Intercreditor Agreement.

2.   *The Security Agreement gave Defendant a security interest in new trailers held by Sales.*

In construing the Security Agreement for the purpose of deciding what security interest was given by Sales to Defendant, the Court agrees with Plaintiff that the Court must utilize the established tenets of state-law contract interpretation concerning the Security Agreement and that Tennessee law applies. *See DirectTV v. Imburgia*, 577 U.S. 47, 54 (2015) ("[T]he interpretation of a contract is ordinarily a matter of state law to which we defer[.]"); *see* Doc. 14-8 at p. 4 ("Governing Law. This Agreement will be governed by federal law applicable to Lender and, to

the extent and preempted by federal law, the laws of the State of Tennessee without regard to its conflicts of law provisions.  This Agreement has been accepted by Lender in the State of Tennessee.")].  The Tennessee Supreme Court summarized the basic rules of contract interpretation as follows:

> "A cardinal rule of contractual interpretation is to ascertain and give effect to the intent of the parties." *Allmand v. Pavletic*, 292 S.W.3d 618, 630 (Tenn. 2009) (citing *Allstate Ins. Co. v. Watson,* 195 S.W.3d 609, 611 (Tenn. 2006)). We initially determine the parties' intent by examining the plain and ordinary meaning of the written words that are "contained within the four corners of the contract." *84 Lumber Co. v. Smith,* 356 S.W.3d 380, 383 (Tenn. 2011) (citing *Kiser v. Wolfe,* 353 S.W.3d 741, 747 (Tenn. 2011)). The literal meaning of the contract language controls if the language is clear and unambiguous. *Allmand,* 292 S.W.3d at 630 (Tenn. 2009). However, if the terms are ambiguous in that they are "susceptible to more than one reasonable interpretation," *Watson,* 195 S.W.3d at 611, we must apply other established rules of construction to aid in determining the contracting parties' intent. *Planters Gin Co. v. Fed. Compress & Warehouse Co.,* 78 S.W.3d 885, 890 (Tenn. 2002). The meaning of the contract becomes a question of fact only if an ambiguity remains after we have applied the appropriate rules of construction. *Id.* (quoting *Smith v. Seaboard Coast Line R.R.,* 639 F.2d 1235, 1239 (5th Cir. Unit B Mar. 1981 (per curiam))).

*Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013).

In one case, the Tennessee Court of Appeals noted the importance of reasonableness:

The written words of a contract are "the lodestar of contract interpretation." *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn., Inc.*, 566 S.W.3d 671, 694 (Tenn. 2019).  We generally interpret words according to "the usual, natural, and ordinary meaning of the contractual language[.]" *Id.* at 691 (citations omitted). If the words of a contract are clear and unambiguous, we apply their plain meaning. *Id.*  However, if the words of a contract are ambiguous (i.e., susceptible to more than one *reasonable* interpretation), we must resort to "other rules of contract construction to determine the parties' intent." *West v. Shelby Cnty. Healthcare Corp.*, 459 S.W.3d 33, 42 (Tenn. 2014) (citing *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013)). If a contract omits "a term that is necessary to a determination of [the parties'] rights and duties, a term which is *reasonable* may be supplied by the court." *Dick Broad. Co. Inc. of Tenn.*, 395 S.W.3d at 667-68 (quoting *German v. Ford*, 300 S.W.3d 692, 706 (Tenn. Ct. App. 2009)).

*Hixson v. Am. Towers, LLC,* 593 S.W.3d 699, 711 (Tenn. Ct. App. 2019) (emphases added).

More specifically, the Court's analysis here is governed by "Article 9 of the Uniform Commercial Code as adopted by Tennessee[, which] governs a transaction . . . 'that creates a security interest in personal property.'" *WM Cap. Partners, LLC v. Thornton*, 525 S.W.3d 265, 269 (Tenn. Ct. App. 2016) (quoting Tenn. Code Ann. § 47–9–109(a)(1) (2013)). Article 9 "provides a comprehensive scheme for the regulation of security interests in personal property and fixtures." U.C.C. § 9–109 cmt. 1 (2014). "It regulates everything from the creation and attachment of the security interest to rights after default and the enforcement of the security interest." *Thornton*, 525 S.W.3d at 269 (quoting *Auto Credit of Nashville v. Wimmer*, 231 S.W.3d 896, 899 (Tenn. 2007)).

Article 9 as codified in Tennessee defines a security interest as "an interest in personal property or fixtures that secures payment or performance of an obligation[,]" Tenn. Code Ann. § 47-1-201(b)(34), which is created or provided for by a security agreement that "is effective according to its terms between the parties, against purchasers of the collateral, and against creditors." Tenn. Code Ann. §§ 47-9-102(74), -201(a). "A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral, unless an agreement expressly postpones the time of attachment." Tenn. Code Ann. § 47-9-203(a). A security interest is enforceable when:

(1) value has been given;

(2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and

(3) one (1) of the following conditions is met:

    (A) the debtor has authenticated a security agreement that provides a description of the collateral . . . .

Tenn. Code Ann. § 47-9- 203(b).

Crucial for the question before the Court, collateral is defined as "*the property* subject to a security interest[,]" Tenn. Code Ann. § 47-9-102(12) (emphasis added).  A description of collateral is sufficient if it "reasonably identifies[5] what is described." Tenn. Code Ann. § 47-9-108(a).

Here, Plaintiff and Defendant disagree about the meaning of the collateral description in the Security Agreement.  By the Security Agreement, Sales granted Defendant a security interest in collateral described as "Purchase Money Security Interest in all New Trailers[.]" [Doc. 14-8 at p. 2.]  Construing the collateral by giving effect to the technical syntax of the words used would be nonsensical and unreasonable in context because the words technically describe intangible personal property of Sales in the form of any PMSI that Sales might hold in new trailers.  Notably, Plaintiff does not assert this clearly illogical conclusion because Sales was not in the business of lending money and obtaining a PMSI from its obligors – it was in the business of selling trailers, and as part of that business, it purchased trailers to sell using funds from lenders to which it gave a security interest in the inventory.  Sales' inventory in new trailers was financed by Plaintiff and Defendant, which each took a security interest in the inventory as collateral (with Plaintiff also receiving a security interest in other items of collateral).  With this undisputed context, the Security Agreement reflects the intent of Sales to pledge and Defendant to accept a security interest not in general intangibles but in inventory of new trailers.  Thus, the only logical, reasonable conclusion is that the parties to the Security Agreement – Sales and Defendant – intended for the collateral to be new trailers held by Sales as part of its business of

---

[5] Examples of reasonable identification includes categories, specific listings, quantities, definitions of collateral under the Uniform Commercial Code, and other methods through which the collateral is "objectively determinable." Tenn. Code Ann. § 47-9-108(b).  However, supergeneric descriptions such as "all the debtor's assets" and "all the debtor's personal property" are insufficient. Tenn. Code Ann. § 47-9-108(c).

selling and leasing trailers.

The Court finds that the *collateral description* in the Security Agreement is not ambiguous such as to create an issue of fact;[6] the only reasonable interpretation is that the collateral pledged to Defendant by Sales was new trailers. The Court agrees with Defendant that, as a matter of law, the words "Purchase Money Security Interest in" are superfluous in the collateral description of the Security Agreement. The existence of a PMSI matters only for determining the type of security interest for purposes of deciding priority between secured parties of the obligor.

That is, as a matter of law, a PMSI is a type of security interest that affects only priority, expanding a secured party's rights in collateral as relates to other secured parties; it is not a limitation on the security interest as between the secured party and the obligor, and as to them, it does not limit the collateral that is subject to the security interest. Cases exist with collateral descriptions that include the words "purchase money security interest," but such a collateral description has neither been argued to be nor treated as a limitation on the secured creditor's security interest as between the secured party and the obligor. *See, e.g., State Bank of Toulon v. Covey (In re Duckworth)*, No. 10-83603, A.P. No. 11-8037, 2013 WL 211231, at *1 (Bankr. C.D. Ill. Jan. 18, 2013) (reciting that several security agreements "described the collateral as a purchase money security interest" in various farm machinery with the dispute over construction of language that was asserted to be a dragnet clause). Indeed, Plaintiff has not cited to, and the Court could not locate, a single case in which a lender was prevented from obtaining a general security interest because the collateral description in the security agreement included the words "purchase money security interest."

---

[6] *See Hixson*, 593 S.W.3d at 711 (defining ambiguity as susceptible to more than one reasonable interpretation).

Instead of modifying a type of collateral, "purchase money" designates the type of security interest, as made clear by Tennessee Code Annotated § 47-9-103:

(1) "purchase-money collateral" means goods or software that secures a purchase-money obligation incurred with respect to that collateral; and

(2) "purchase-money obligation" means an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used.

(b) Purchase-money security interest in goods. A security interest in goods is a purchase-money security interest:

(1) to the extent that the goods are purchase-money collateral with respect to that security interest;

(2) if the security interest is in inventory that is or was purchase-money collateral, also to the extent that the security interest secures a purchase-money obligation incurred with respect to other inventory in which the secured party holds or held a purchase-money security interest . . . .

Tenn. Code Ann. § 47-9-103(a)-(b).

The official comment to section 47-9-103 concerning the general scope of the section explains how the provisions for creating a PMSI fit into the Article 9 scheme: "Under section 9-309(1) [§ 47-9-309(1)], a [PMSI] in consumer goods is perfected when it attaches. Sections 9-317 and 9-324 [§§ 47-9-317 and 47-9-324] provide special priority rules for [PMSIs] in a variety of contexts. *This section explains when a security interest enjoys purchase-money status*." Tenn. Code Ann. § 47-9-103 cmt. 2 (emphasis added).

Although not applicable here, subsection (e) illustrates the principle that a secured party's failure to comply with the statutory requirements to obtain a PMSI do not strip it of secured status generally. Subsection (e) codifies the judicially created "dual-status" rule, "under which a security interest may be a [PMSI] to some extent and a non[PMSI] to some extent"[7]:

---

[7] Tenn. Code Ann. § 47-9-103 cmt. 7.a.

(e) Application of payment.

(1) In a transaction other than a consumer-goods transaction, if the extent to which a security interest is a purchase-money security interest depends on the application of a payment to a particular obligation, the payment must be applied:

(A) in accordance with any reasonable method of application to which the parties agree;

(B) in the absence of the parties' agreement to a reasonable method, in accordance with any intention of the obligor manifested at or before the time of payment; or

(C) in the absence of an agreement to a reasonable method and a timely manifestation of the obligor's intention, in the following order:

(i) to obligations that are not secured; and

(ii) if more than one (1) obligation is secured, to obligations secured by purchase-money security interests in the order in which those obligations were incurred.

(2) In a consumer-goods transaction, if the extent to which a security interest is a purchase-money security interest depends on the application of a payment to a particular obligation:

(A) the payment must be applied so that the secured party retains no purchase money security interest in any property as to which the secured party has recovered payments aggregating the amount of the sale price including any finance charges attributable thereto; and

(B) for the purposes of this subsection (e) only, in the case of items purchased on different dates, the first item purchased shall be deemed the first paid for, and in the case of items purchased on the same date, the lowest priced item shall be deemed first paid for.

Tenn. Code Ann. § 47-9-103(e).

In support of its opposition to the Dismissal Motion, Plaintiff acknowledges:

Generally a discussion of a [PMSI] takes place only after a security interest has attached pursuant to Tenn. Code Ann. §47-9-203 and has been properly perfected. Normally, the issue of purchase money is reached only in deciding competing priorities of two secured creditors whose security interests have attached to the same collateral and have been duly perfected.

[Doc. 28 at p. 5.]  Regardless of this general principle, Plaintiff argues in its brief that "the security interest acquired by FPB . . . is limited to only a [PMSI] in new trailers of the Debtor[, which] surely means that if FPB's loan proceeds were not in fact used to purchase any of the trailers at issue its limited security interest would not have attached to those particular trailers."  [*Id.* at p. 3.]  Plaintiff also argues the following:

> To the extent that FPB can prove that it provided funds in fact used for the purchase of any of the new trailers at issue, then GFB concedes that FPB would not only have a valid security interest in that new trailer, but that it would have priority pursuant to the terms of the Intercreditor Agreement.  However, if it cannot prove that its loan proceeds were in fact used for the purchase of a particular trailer, then its security interest would not attach to that trailer, because it only acquired what is stated to be a purchase money security interest, and since [*sic*] FPB has the burden of proving its security interest pursuant to Tenn. Code Ann. § 47-9-103(g), which specifically provides: "In a transaction other than a consumer goods transaction, a secured party claiming a purchase-money security interest has the burden of establishing the extent to which the security interest is a purchase-money security interest."

[*Id.* at pp. 3-4.]

Plaintiff misconstrues the essence of a PMSI and a collateral description.  As explained above, "purchase money" connotes priority between secured parties.  Failure to satisfy the statutory requirements for obtaining a PMSI changes the *priority* of the security interest but does not affect the *existence* of a security interest.  Defendant's alleged failure to satisfy the "purchase money" aspect of the security interest granted by Sales in the Security Agreement does not negate Defendant's security interest, which primes Plaintiff's otherwise priority security interest because of the Intercreditor Agreement.  Any other interpretation is illogical and does not comport with Tennessee law.

The Court, therefore, determines as a matter of law that use of "Purchase Money Security Interest" in the collateral description of the Security Agreement, even if Defendant failed to ensure that it possessed a PMSI, does not strip Defendant of a security interest that is entitled to

priority over Plaintiff's security interest because of the Intercreditor Agreement, by which Plaintiff subordinated its security interest "to the security interest of [Defendant] in all new trailer inventory now or hereinafter held by [Sales] or offered for sale, lease or rental by [Sales]" other than those excepted by the Intercreditor Agreement.

## II. ORDER

For the foregoing reasons, even accepting Plaintiff's factual allegations as true and considering the Complaint in a light most favorable to the Plaintiff as required by Rule 12(b)(6), Plaintiff has failed to state a claim upon which relief can be granted. The Court, accordingly, directs that the Second Renewed Motion to Dismiss [Doc. 26], is GRANTED, and this adversary proceeding is DISMISSED.

### 